Shepherd v. Pressey.

## SHEPHERD *v.* PRESSEY.

Acceptance and actual receipt by the buyer of goods verbally bargained for, must be shown, to take a case out of the statute of frauds.

No act of the seller alone is sufficient.

No promise or declaration of the buyer that he will take the goods, then left for him at another place, at a future day, can be held an acceptance, or an admission of acceptance.

INDEBITATUS ASSUMPSIT, according to an account annexed to the writ, as follows, viz. :

" *January* 9, 1854.   75 bushels of potatoes, at
                     50 cents,   . . . .   $37,50
                     Sacks, . . . . . .     5,00
                                          _____
                                           $42,50

The charge for sacks was abandoned by the plaintiff.

It was conceded that on the Wednesday or Thursday previous to Monday, January 9th, the defendant bargained with the plaintiff for seventy-five bushels of potatoes, to be delivered on the said Monday at the Petty place, or Petty depot, so called, in West Canaan ; the defendant agreeing to have a suitable car there to receive them, on that day, by eleven o'clock, A. M.

On that day the plaintiff drew two loads of potatoes to said depot, arriving there about one o'clock. The defendant had no car there that day, nor any person to receive the potatoes, and the plaintiff deposited the potatoes in a cellar under the store adjoining the depot, known as the Petty place, which stood near the railroad track.

The evidence tended to show that the potatoes were measured in a half bushel basket before they were drawn, and as measured there were seventy-five bushels, though it did not appear that the basket had been sealed by the sealer of weights and measures, or that the potatoes had been weighed.

Augustus Shepherd, called by the plaintiff, testified that he had a conversation with the defendant a week or fortnight after said Monday, in Barney's store, about drawing the potatoes, and he told the defendant that the plaintiff and he loaded up the potatoes on said Monday, and thought it would do to start, and started. The defendant said he thought it would do to start that day, and he expected they would start, and went down to East Canaan and tried to have Mr. Leeds start a car for West Canaan, and that he went to see Mr. Underhill, and tried to have him go to West Canaan to load the potatoes, but that his family were sick and he could not go. He further testified, that on the afternoon of the same day he was present at a conversation between the defendant and the plaintiff. The defendant told the plaintiff that Leeds said he would take the potatoes away the next Monday; that he told the plaintiff to let the bags be there, — the potatoes would be taken the next Monday, and that he, the defendant, would let the plaintiff have some sacks instead of those in which the potatoes were, if he could not do better.

Robert Underhill (whose deposition was taken March 31, 1855,) testified that some time, a year ago last winter, at East Canaan, about the time that Leeds had his court there, the defendant came to him and said that he had some potatoes at West Canaan, and wanted him to take them down below. Witness could not say positively whether the defendant said the potatoes

were his, or belonged to some one else. The defendant said there were some there, and wanted the witness to go down with them.

Horatio Gates testified, among other matters, that he hauled some potatoes to the same place, on the same day that Shepherd did, and that some of his (the witness's) potatoes were frozen. He also testified that he helped put the potatoes drawn by Shepherd into the cellar, but did not notice that any of them were frozen. The witness saw the potatoes in the cellar about the middle of February, and then noticed that the potatoes in one of the sacks, which was untied, were frozen.

The plaintiff here rested his case, and the defendant moved for a nonsuit, which motion was denied by the court, to which ruling the defendant excepted.

A verdict was then taken, by consent, on which judgment is to be rendered, or the verdict set aside and the plaintiff nonsuited, as the opinion of the court shall be on the foregoing case.

*Kittredge,* for the defendant. There was no delivery or acceptance of the potatoes in this case, and the plaintiff cannot recover. The statute of frauds intervenes.

The potatoes being drawn to the Petty place, were deposited in a cellar by the plaintiff on his own account. They were on storage for him. He had not parted with his possession. They were in his sacks, neither weighed, measured, nor paid for.

The rule is, that so long as the buyer continues to have a right to object, either to the quantum or quality of the goods, and so long as the seller retains a lien on the goods, there can be no receiving of them, within the statute, by the vendee. 2 Stark. Ev. 611.

There was no delivery. The plaintiff had not parted with the possession. His lien for the price remained. The plaintiff had not done a single act to indicate that he had parted with the possession.

The owner of the cellar held the potatoes for the plaintiff, and not for the defendant. The quantity was uncertain. The de-

fendant had a right to see to the weighing or measuring. The measuring of them in a basket, unsealed, was no measure at all, nor was it intended as such. Weighing is the only legal mode of ascertaining the quantity under the statute, unless by agreement. Comp. St., ch. 112. Selling by an unsealed measure is illegal. Comp. St., ch. 113, sec. 9. The price, therefore, cannot be recovered. *Pray* v. *Burbank*, 10 N. H. 377 ; *Roby* v. *West*, 4 N. H. 285.

The defendant had a right to object to the quality. He had done nothing to indicate a waiver of this right.

The goods being on storage, there might have been a symbolical delivery, by giving an order on the warehouse-man for the potatoes, and an acceptance by him of the order, or the transfer of his receipt for them. *Chapman* v. *Searle*, 3 Pick. 38 ; *Wilkes* v. *Ferris*, 5 Johns. 335. But there was nothing of that here. Some such act was necessary. Chitty on Contracts, 5 Hill 205.

In the case of *Elmore* v. *Stone*, 1 Taunt. 458, the parties had had a talk about the sale of some horses, but did not agree upon the price. Afterwards the defendant sent word to the plaintiff that the horses were his, and wished him to keep them at livery for him, which the plaintiff consented to do, and removed them from his sale stable to his livery stable. This, in that case, was held a delivery, but the law of the case has been very much doubted, as in *Hare* v. *Palmer*, 3 B. & A. 324 ; *Proctor* v. *Jones*, 2 C. & P. 534 ; *Schindler* v. *Houston*, 1 Comst. 261 ; 1 Denio 48 ; 2 Pars. on Cont. 321, *n. e.* But this case does not come up to that ; while the cases of *Carter* v. *Touissant*, 5 B. & A. 855, and *Smith* v. *Surnam*, 9 B. & C. 561, are with us. These cases are all cited in Chitty on Con. 309, and so on.

What the defendant said to the plaintiff was no acceptance. It was only a promise to accept the next Monday, but the plaintiff did not deliver, nor did he ever promise to deliver. Defendant had a right to object to the quantity and quality, and the plaintiff did not indicate any thing by which it could be presumed that he had parted with his lien.

Shepherd *v.* Pressey.

Notwithstanding this conversation between the parties, the potatoes remained as before — in store for the plaintiff, the owner having no authority to deliver them to the defendant.

There was no act done by either party as a delivery or acceptance of the potatoes.

*Hibbard* and *Weeks*, for the plaintiff.

The contract having been performed on the plaintiff's part, he may maintain his action on the general counts, and the count in this case, (on an account annexed,) is equivalent to a general count for goods sold and delivered. *Cummings* v. *Nichols*, 13 N. H. 420–7; *Messer* v. *Woodman*, 2 Fost. 273; 1 Chit. Pl. 372, 3.

The contract having been executed and performed on the plaintiff's part, this action is not affected by the statute of frauds. It is sufficient if there was a delivery of the goods, valid as between the parties. *Messer* v. *Woodman*, 2 Fost. 175; *Storer* v. *Dennison*, 13 Pick. 1; *Pomroy* v. *Winship*, 12 Mass. 514; *Brown* v. *Bellows*, 4 Pick. 179. If there was a delivery or an acceptance, the contract, whether express or implied, is not affected by the statute of frauds. This was not an action for goods bargained and sold, but for goods sold and delivered.

If the conceded facts of the plaintiff separating, drawing and leaving the quantity of potatoes bargained for, at the place, time, and in the manner previously designated and assented to by the defendant, and agreed upon by the parties, did not alone constitute a sufficient delivery, there is evidence abundant, as we think, tending to show an after acceptance by the defendant, and a waiver of all objections he might have to the goods, or to the delivery of them.

There was evidence of the defendant's acts and sayings with and to the plaintiff and others, some of them after a considerable lapse of time from the drawing, such as speaking of and treating the goods as his own, &c., which of themselves constituted an acceptance and a waiver; evidence from which the jury might also infer that there *had been* a delivery, and that de-

fendant had accepted the goods, and had waived all objections. There having been a verdict for the plaintiff, it must stand, if there was evidence tending to show these facts, or either of them.

Slight evidence on the point of acceptance is sufficient, particularly if the intent of the parties be clearly shown. 8 Pick. 443 ; 2 Stark. Ev. 254, note. Defendant's saying that the potatoes were his, was an admission, not only of that fact, but of all the facts necessary to make them his. *Nealley* v. *Greenough*, 5 Fost. 325.

If goods of any worth have been received by the defendant from the plaintiff, their value can be recovered in this form of action, without regard to the prior contract, or to the question whether its stipulations have been performed or not.

That the conceded facts constitute a sufficient delivery between the parties, *vide Shumway* v. *Rutter*, 8 Pick. 443 ; 2 Stark Ev. 354 ; 1 Chitt. Pl. 379 ; 5 B. & C. 628 ; *People* v. *Haynes*, 14 Wend. 546 ; *Ricker* v. *Cross*, 5 N. H. 570.·

That this evidence tended to show an acceptance, *vide Rhodes* v. *Thwaites*, 6 B. & C. 388 ; 1 Bouv. L. Dict. 49 ; cases cited 1 U. S. Annual Dig., p. 286, art. 153, 154.

Section 9, chap. 113, of Comp. Stat., does not apply to potatoes at all. They are excluded from its operation by sec. 2, ch. 112, Comp. Stat.

It was competent for the parties to agree on any mode of determining the quantity. Sec. 3, ch. 112, Comp. Stat.

No penalty was incurred in this case, because it was impossible for the plaintiff to comply with the statute ; it not appearing that the town had furnished a set of standard weights and measures, nor chosen a sealer of weights and measures, as provided by law. The plaintiff, setting up in his defence merely *malum prohibitum*, is bound to prove every fact necessary to that defence. *Gassett* v. *Godfrey*, 6 Fost. 415 ; *Williams* v. *Tappan*, 3 Fost. 385.

The affirmative of these questions not appearing, the negative is to be assumed as true.

It does not appear that the plaintiff sold and disposed of the potatoes by the unsealed measure, and the defendant had nothing to do with that measuring.

BELL, J. ·The provision of our statute relative to contracts for the sale of goods, (Rev. St., ch. 180, sec. 9,) is substantially, and almost in terms, the same as the English statute of frauds ; 29 Ch. II., ch. 3, sec. 17. This case falls under that clause of the statute which provides, that " no contract for the sale of any goods, wares or merchandize for the price of thirty-three dollars and upwards, shall be valid, *unless the buyer shall accept part of the property so sold, and actually receive the same.*"

The recent case of *Hunt* v. *Hecht*, 20 E. L. & E. 524 ; S. C., 8 W. H. & G. 84 ; shows the received construction of the English statute. It is there held that the question is, whether the defendants accepted part of the goods sold, and *actually received* the same. There is no acceptance, unless the purchaser has exercised his option to receive them or not, or has done something that has deprived him of his option.

There must be an actual acceptance by the buyer, with an intention of taking the possession as owner. *Phillips* v. *Bistolli*, 2 B. & C. 513 ; S. C., 3 D. & R. 827. No act of the seller alone, in however strict conformity to the terms of the contract, will satisfy the statute. There must be acts of the buyer, of accepting and actually receiving part of the goods sold, beyond the mere fact of entering into the contract, to bind the latter. Thus, though the general rule is that a delivery to a carrier according to the order of the buyer is a complete delivery to him, and vests the property in him, so that they are afterwards at his risk, in cases not within this statute, yet there is in such a case no actual acceptance to satisfy the statute, so long as the buyer has a right to object to the quantity or quality of the goods. *Kent* v. *Huskisson*, 3 B. & P. 233 ; *Hanson* v. *Armitage*, 3 B. & A. 557.

The removal of goods by the seller to a place appointed by the buyer, will not imply any acceptance of the goods by the

latter. *Astey* v. *Emery*, 4 M. & S. 262 ; *Carter* v. *Touissant*, 5 B. & A. 855 ; *Dodsley* v. *Varley*, 12 A. & E. 632 ; *Baldy* v. *Parker*, 2 B. & C. 37 ; *Kent* v. *Huskisson*, 3 B. & P. 233 ; *Aribal* v. *Levy*, 10 Bing. 376 ; *Anderson* v. *Hodgson*, 5 Price 630 ; *Norman* v. *Phillips*, 14 L. J., N. S. 306 ; *Gorman* v. *Boddy*, 2 C. & K. 145 ; 14 M. & W. 277.

Still less a mere separation of goods from others, owned by the seller. *Hawe* v. *Palmer*, 3 B. & A. 321.

Though if the buyer, after the completion of the contract, assume the control of the property, as by selling a part of it, *Chaplin* v. *Rogers*, 1 East 192 ; or by directing a horse to be kept at livery for him, or sent to pasture, if the seller assents to the proposal, thus surrendering his lien for the price; *Elmore* v. *Stone*, 1 Taunt. 458 ; *Carter* v. *Touissant*, *ante*, this has been held to be an acceptance. But if there is nothing indicating such surrender of the seller's lien for the price, any acts of control by the buyer will not be an acceptance. *Tempest* v. *Fitzgerald*, 3 B. & A. 680 ; *Carter* v. *Touissant*, *ante* ; *Smith* v. *Surman*, 9 B. & C. 561 ; *Boulter* v. *Arnott*, 1 C. & M. 333 ; *Goodall* v. *Skelton*, 2 H. B. 316.

In the case of *Schindler* v. *Houston*, 1 Comst. 261, it was held in New-York that to constitute a delivery and acceptance of goods, such as the statute requires, something more than mere words is necessary. Superadded to the language of the contract, there must be some act of the parties amounting to a transfer of the possession, and an acceptance thereof by the buyer ; and that the case even of any cumbrous articles is not an exception to this rule ; *S. P. Artcher* v. *Teh*, 5 Hill 205 ; and *Ely* v. *Ormsby*, 12 Barb. 570. The case of *Dale* v. *Simpson*, 21 Pick. 384, in Massachusetts, recognizes the same principles.

Where the facts in relation to a contract of sale, alleged to be within the statute of frauds, are not in dispute, it belongs to the court to determine their legal effect. Thus in *Chaplin* v. *Rogers*, 1 East 192, it was held, that when the facts and intentions of the parties are ascertained, it is for the court to decide whether by law they constitute an acceptance ; but if they are

disputed, it is a question for the jury, whether there has been a delivery and acceptance in point of fact; and their finding that there was an acceptance, puts an end to the question of law.

The present case is meagre in its statements of facts, but it is obvious that the burden of proof is upon the plaintiff; and if he failed to establish any fact necessary to make out his title, the defendant was entitled to a nonsuit or verdict.

From the settled construction of the statute of frauds, it follows that there was nothing in the delivery or deposit of these goods at the place of delivery, agreed on by the parties, in the absence of the defendant, which can be construed as an acceptance and actual receipt of the goods by him.

Notwithstanding any thing in the terms of their unwritten contract, if the plaintiff had transported his potatoes to the place of delivery in perfect order as to quantity, quality and condition, at the precise time stipulated, and had there tendered them to the defendant, the latter might take or refuse them, as he pleased. And so the defendant, being there with his car and his money, might have tendered the price agreed on to the plaintiff, and demanded the potatoes, and the latter might deliver them to him, or sell them to another, as he pleased, because their verbal agreement was not binding in law upon either of them.

There is in this case no direct evidence of any act of the defendant, from which an acceptance and actual receipt of the articles agreed for can be inferred, and the only evidence to be considered is his declarations. As mere words constituting a part of the original contract do not constitute an acceptance, so we are of opinion that mere words afterwards used, looking to the future, to acts afterwards to be done by the purchaser towards carrying out the contract, do not constitute an acceptance, or prove the actual receipt required by the statute.

The testimony of Augustus Shepard alone seems material to be considered. He says he was present at a conversation between the plaintiff and defendant a week or fortnight after the potatoes were left at the Petty depot, and after the defendant was informed

of that fact; and the defendant then told the plaintiff that Leeds said he would take the potatoes away the next Monday. He told the plaintiff to let the bags be there, the potatoes would be taken the next Monday, and that he, the defendant, would let plaintiff have some sacks instead of those in which the potatoes were, if he could not do better. The plaintiff contends that this evidence was proper to be considered by the jury as an acceptance of the goods then made. But we think it can not be so regarded. It relates to acts to be done at a future day; a taking away of the potatoes on the next Monday. It does not necessarily or naturally imply any waiver of his right to object or refuse the goods on account of any defect of their quality or quantity. It falls entirely short of proving an *actual receipt* of the potatoes, which is also indispensable to give validity to the bargain; for there is no proof that they were left in the care of any one to be delivered to the defendant, or that the plaintiff in any way assented to the delivery until the purchase money was paid.

The testimony of Underhill is too uncertain to be relied on, in proof of either the acceptance or receipt of these potatoes by the defendant. He says the defendant said he had some potatoes at West Canaan, and wanted him to take them down below, but the witness could not say positively whether he said they were his, or belonged to some one else. If he did not admit them to be his, the evidence has no point.

*Verdict set aside, and plaintiff nonsuit.*